# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARL EVERT, et al., : | |
|                Plaintiffs, : | |
| : | CIVIL ACTION |
| v. : | No. 17-04478 |
| : | |
| FRANCIS PETTINICHIO, III, and : | |
| CLEAN HARBORS ENVIRONMENTAL : | |
| SERVICES, INC., : | |
|                Defendants. : | |

## MEMORANDUM

**McHUGH, J.**                                                                       **APRIL 3, 2018**

      This is a straightforward negligence action in which Plaintiff Carl Evert alleges he suffered injury after his car was struck by a toolbox that flew off the side of a box truck being operated by Defendant Clean Harbors Environmental Services, Inc., on Route 73 in Pennsylvania. Clean Harbors produced its Incident Report concerning the accident, but redacted multiple entries on grounds of privilege. In response to those redactions, Plaintiffs have filed a Motion to Strike Objections and Compel Production of Documents. Plaintiffs' Motion will be granted, but the issues raised warrant discussion because Defendants' aggressive and unjustified assertion of privilege is troubling.

      In objecting to production of the full Report, the defense invoked Rule 26's protection for trial preparation materials, and communications between an attorney and an expert witness. *See* Pls.' Ex. B, at 1–2, ECF No. 11 (Defendants' Response and Objection to Plaintiffs' Initial Request for Production). Rule 26(b)(3)(A) provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for

another party or its representative . . . ." In addition, on the face of the Objection itself, counsel specifically cited *In re Cendant Corporate Securities Litigation*, 343 F.3d 658 (3d Cir. 2003), and an order entered in a Western District Case, *Hooper v. Safety-Kleen Sys., Inc.*, 16-cv-00123 (W.D. Pa. Apr. 18, 2016), ECF No. 37. As discussed below, because no attorney was involved in any respect, neither Rule 26(b)(4)(C), nor *Cendant*, nor the docketed order in *Hooper* justifies Defendants' objection in any respect.[1] Furthermore, the redacted information does not qualify as trial preparation material.

With respect to the privilege for trial preparation material, Defendants weakly assert that "it was readily apparent Mr. Evert had an identifiable claim for property damage" and that "litigation was more than an abstract possibility or an unwanted fear." Defs.' Br. 3, ECF No. 13. By that definition, virtually every accident investigation would become privileged as trial preparation material. There is no support for such an expansive view. The commentary to Rule 26 specifically states that "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other non-litigation purposes are not under the qualified immunity provided by this subdivision." *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993). Moore's Federal Practice cites *Soeder v. General Dynamics Corporation*, 90 F.R.D. 253, 255 (D. Nev. 1980), as an exemplary summary of this principle. 6 James Wm. Moore et al., Moore's Federal Practice § 26.70[3][c][ii] (3d ed. 2017). In *Soeder*, the defendant manufacturer of an aircraft, like Clean Harbors here, also performed investigations as a matter of routine. As the court explained:

> The fact that Defendant anticipates the contingency of litigation following a crash of one of its aircraft does not automatically qualify Defendant's 'in-house' report as work product. Certainly litigation is a contingency to be recognized by any aircraft accident. However, given the equally reasonable desire of Defendant to improve its aircraft

---

[1] There was no opinion in *Hooper*, so for practical purposes the objection here is based on counsel's interpretation of a judge's order, rather than a judicially created precedent.

> products, to protect future pilots and passengers of its aircraft, to guard against adverse publicity in connection with such aircraft crashes, and to promote its own economic interests by improving its prospect for future contracts for the production of said aircraft, it can hardly be said that Defendant's 'in-house' report is not prepared in the ordinary course of business.

*Id.* (citations omitted); *see also United States v. Ernstoff*, 183 F.R.D. 148, 156 (D.N.J. 1998) ("Even if litigation was reasonably anticipated under the 'reasonable anticipation' test, routine or ordinary investigations or reports are not work product and can be obtained through normal discovery procedures without a special showing of need."); *accord Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 661 (S.D. Ind. 1991); *Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Cos.*, 123 F.R.D. 198, 202 n.4 (M.D.N.C. 1988); *Mission Nat. Ins. Co. v. Lilly*, 112 F.R.D. 160, 163 (D. Minn. 1986).

The format of the Incident Report, and the circumstances under which Defendants conducted the investigation, make clear that it was not undertaken in anticipation of litigation. The document in question consists of a preprinted form with a series of subject headings, and blank spaces to record information. The various categories covered by the form include basic identifying information, vehicle information, damage assessments, the circumstances surrounding the accident, cause analysis, and proposed corrective actions. It identifies those who participated as engaging in a "Management Team Investigation." In simple terms, it is an accident investigation report, albeit one organized in a systemic way.

Defendants have not identified any participant in the investigation as an attorney, nor is any attorney listed as having ordered the investigation and report, or even having received a copy. The Report makes no reference to any claim or litigation, current or anticipated. Consequently, the principal basis upon which Defendants asserted a privilege does not exist.

Moreover, the authority cited within Defendants' Objection to Plaintiffs' Initial Request for Production itself is in practical terms misleading, because it implies attorney participation when in fact there was none. Defendants' Objection cites *Cendant*, a case that involved discovery relating to a meeting between a defendant's former auditor and a consultant retained for purposes of trial, with counsel present at the meeting; it has no possible relevance here. As to *Hooper*, if one takes the time to extract the facts from the docketed filings, there was both a representation in the briefing that defendant's counsel ordered managers to produce an investigative report on the incident, Defs.' Sur-Reply 2–3, *Hooper*, 16-cv-00123 (W.D. Pa. Mar. 10, 2016), ECF No. 36, and an affidavit filed by the defendant's Area General Manager stating that the "draft report was prepared by the SK Management Team in anticipation of the filing of [plaintiff's] worker's compensation claim . . . ." Aff. of Thomas Rentz, *Hooper*, 16-cv-00123 (W.D. Pa. Mar. 16, 2016), ECF No. 29-1.

Defendants' reference in its Objection to Rule 26(b)(4)(C) is even harder to justify. Subparagraph (b)(4)(C) shields communications between a party's attorney and expert witnesses. By referencing Rule 26(b)(4)(C) in its Objection, Defendants implied that the material involved communication with an attorney. But even if one were generously to assume that a member of Clean Harbors' investigating team might be asked to offer opinions at some later date, the Incident Report was in no respect a communication with counsel.

In its Response to Plaintiffs' pending Motion, Clean Harbors offers no additional justification for privilege, and again relies on *Cendant* and the court's order in *Hooper*. Defs.' Resp., ECF No. 13. As Plaintiff correctly observes, the few cases cited by the defense are ones where legal counsel had some direct involvement, yet there is no suggestion whatsoever that legal counsel had involvement here.

Aside from the lack of any colorable basis on which to invoke privilege, the redactions here are troublesome because even if a privilege existed, it would extend no further than the "mental impressions, opinions, and conclusions" of the investigators, and not to facts. Even in *Hooper*, which the defense wrongly interprets as recognizing a privilege that would apply here, Judge Fisher struck the redaction of factual observations.[2] In this case, on the final page of the Incident Report, the entry for "Primary Cause Detail" was redacted. That entry reads: "Wear to bolt holes on aluminum box." To state the obvious, this can only be described as a specific, factual observation, not a "mental impression." And that redaction is rendered all the more problematic because Clean Harbors' driver was instructed to discard the tool box as beyond repair. Pls.' Ex. A, at 100:1–7, ECF No. 14. In short, having eliminated the physical evidence itself, Clean Harbors then sought to prevent disclosure of what it had observed during its investigation.

Such sleight of hand underscores the need to prevent abuse of the trial preparation privilege in the context of the initial investigation of an incident, because one party will typically have exclusive control over access to the sources of proof. If records prepared in the ordinary course of business can be deemed privileged simply because a claim might arise at a later point, then the rules of discovery become an impediment to determining the facts of a case, directly contrary to their purpose.

This maneuvering is also of concern to the Court by virtue of the position taken by the defense at the Rule 16 Conference. When asked if Clean Harbors was seriously contesting liability when a toolbox flew off one its trucks on a public highway, counsel invoked the "mere accident" defense and argued that the driver had followed a pre-trip inspection protocol. Putting to one side the fact that the Incident Report identified a defect providing a clear explanation for

---

[2] Defense counsel here was also counsel in *Hooper*.

the accident, other redacted portions further identified "inadequate maintenance" and the need to inspect inside the tool boxes as part of "preventative actions." Thus, the core premise of defense counsel's argument to the Court—that the driver's pre-trip inspection would necessarily have revealed any safety hazard—was irreconcilable with his client's own investigation.

Plaintiffs' motion to compel will be granted, and the full Incident Report, without redactions, shall be produced. Plaintiffs' counsel, if he deems if necessary, will be granted leave to re-depose Clean Harbors' driver, Francis Pettinichio, with costs to be borne by Defendant.

/s/ Gerald Austin McHugh
United States District Judge